UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number:  13-20317-CIV-MORENO

JUAN C. PARES, EMILIO ALONZO, and
MARIO GOMEZ, individually and on behalf of
others similarly situated,

       Plaintiffs,

vs.

KENDALL LAKES AUTOMOTIVE, LLC, d/b/a
Kendall Dodge Chrysler Jeep Ram and Miami
Lakes Auto Mall; MIAMI LAKES AM, LLC,
d/b/a Kendall Dodge Chrysler Jeep Ram and
Miami Lakes Auto Mall; and FAISAL AHMED,
individually,

       Defendants.

_____/

## ORDER GRANTING MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION

THIS CAUSE came before the Court upon Plaintiffs' Motion for Conditional Certification

of Collective Action Under the FLSA, Production by Defendants of a Comprehensive List of Present

and Former Employees, and Court Authorized Mailing of Opt-In Notices **(D.E. No. 7)**, filed on

**February 8, 2013**. On January 29, 2013. Plaintiffs Juan C. Pares, Emilio Alonzo, and Mario Gomez

filed this suit as former employees of Defendants Kendall Lakes Automotive, LLC, Miami Lakes

AM, LLC, and Faisal Ahmed, alleging that Defendants violated the Fair Labor Standards Act

("FLSA") by instituting a payment plan that failed to cover the minimum wage.  Plaintiffs

subsequently filed the present motion seeking conditional certification of a class of salespeople

employed by Defendants who were subject to the payment plan at issue.  Since Plaintiffs have

demonstrated the existence of other salespeople who desire to opt into the lawsuit and who are similarly situated to Plaintiffs, the Court grants Plaintiffs' motion for conditional certification.

## I. FACTUAL BACKGROUND

Defendants Kendall Lakes Automotive and Miami Lakes AM are franchised automobile dealerships located in Kendall and Miami Lakes, Florida, respectively. Defendant Faisal Ahmed and his son Ali Ahmed are managing members of both limited liability companies. The Miami Lakes dealership has been in operation since June 15, 2010 while the Kendall location opened on February 3, 2012. The two dealerships are controlled by separate general managers and maintain different local management for the administration of daily operations. Additionally, each dealership handles its hiring and firing, retains its own personnel policies and payment plans, maintains a separate bank account for payroll and tax purposes, and lacks supervisory authority over the employees of the other. Nevertheless, the dealerships share an office at the Miami Lakes location that handles human resources, payroll processing, and accounting functions for both sites. Furthermore, the paperwork for each sale conducted in Kendall is placed in a deal jacket and sent to the Miami Lakes dealership for the calculation of commissions and the creation of payroll checks.

In March 2012, the Kendall location hired Plaintiffs Juan C. Pares, Emilio Alonzo, and Mario Gomez as car salesmen. Pares himself had also previously worked as a salesman at the Miami Lakes dealership from October 2010 to November 2011. At the onset of Pares's and Gomez's employment, the two received $600 on a biweekly basis plus all of the commissions earned from their sales during that period. This biweekly payment was not connected to the number of hours that Pares and Gomez would work.

In July 2012, however, the dealership altered its payment plan.  Though Pares and Gomez continued to receive the $600 biweekly payments, the dealership began treating the amount as a draw against the commissions that they earned.  If the salesmen's commissions exceeded the draw at the end of the biweekly period, the salesmen would receive their commissions instead of the draw.  At the end of the monthly settlement period, the dealership would calculate Pares's and Gomez's monthly compensation, including commissions and bonus earnings minus any charge backs.  If the total monthly compensation exceeded the draws paid during the month, the dealership would pay Pares and Gomez the difference.  However, if the monthly compensation was less than the biweekly draws paid, the dealership would then carry that deficit forward in perpetuity to subsequent months until the salesmen could pay it back from future earnings.  Thus Pares and Gomez would have to pay off these deficits from commission surpluses in future months.  Pares additionally states that he was paid in the same manner during his time at the Miami Lakes location, although the biweekly draw there was tied to the number of hours worked rather than set at $600.

Similarly, Alonzo received an advance of $7.67 for every hour logged on a biweekly basis from the outset of his employment.  Yet the dealership also treated that advance as a draw against the commissions that Alonzo earned, subtracting that amount from his total commissions each month in the same manner as Pares's and Gomez's payment plan.  Alonzo also claims that the dealership reduced his commissions by $10 for every car sold for a Christmas bonus that he never received.  He further states that he received an additional $200 deduction from his biweekly draw in September 2012 for a seminar that he did not attend.

In addition to the named plaintiffs, two other salesmen have expressed intent to join the

lawsuit.  Donald Charnin and Eduardo Cerra were both employed as salesmen at the Kendall location beginning in August 2012.  Like Alonzo, Charnin and Cerra each received biweekly draws of $7.67 per hour logged that the dealership counted against their total commissions earned each month.

All five salesmen now maintain that they actually worked approximately 120 to 130 hours per biweekly period during their time of employment, although Cerra insists that he worked 130 to 140 hours per biweekly period.  More importantly, Alonzo, Charnin, and Cerra state that their time records do not accurately reflect the number of hours that they in fact worked.  Citing the payment plan's "incentive to under-report [sic] hours worked because any funds loaned on account of hours worked actually increased the amount . . . owe[d]," the three claim that they worked more hours than they recorded.  Decl. of Emilio Alonzo ¶ 6.  For this reason, Plaintiffs' statement of claim reflects a noticeably larger amount of hours worked by Alonzo, Charnin, and Cerra than is reported in Defendants' response to the statement of claim. *Compare* Pls.' Notice of Filing Initial Estimate of Wage Claims and Preliminary Calculations 5, 7–8, *with* Defs.' Resp. to Statement of Claim 6–9.

Plaintiffs' employment at the Kendall dealership collectively concluded between October 2012 and January 2013.  In the case of Pares and Gomez, the dealership terminated their employment on October 31, 2012 after they complained to the general manager about not being paid a minimum hourly wage for the number of hours that they actually worked.  The dealership similarly terminated Charnin's employment on January 25, 2013.  Cerra himself left the dealership in October 2012 because he claims he was not paid a minimum hourly wage and did not feel comfortable accumulating a debt to the dealership.  Alonzo also left the dealership in

January 2013.

On January 29, 2013, Plaintiffs filed this lawsuit alleging that Defendants' payment plan

violated the FLSA by preventing the salesmen from generating enough commissions to cover the

minimum wage owed for the number of hours that they actually worked.  They have now filed

this motion requesting conditional certification of a collective action under the FLSA on behalf

of all salespeople who were subject to the "draw against commission" payment plan at the

Kendall and Miami Lakes dealerships between January 29, 2010 and the present.  To that end,

they have attached the affidavits of Charnin and Cerra as evidence of other salespeople who wish

to opt into the lawsuit.  Indeed, Plaintiffs contend that there are approximately 100 salespeople

who are currently subject to the payment plan at the Kendall and Miami Lakes locations in

addition to an unknown number who have been subject to the plan at some point during the

requested period.  In Plaintiffs' estimation, "[m]any of the people who work in this area

misunderstand their rights and believe that as salespeople they are entitled to be paid only so

much as they generate in sales commissions, no matter how many hours they work during any

given pay period."  Decl. of Emilio Alonzo ¶ 12.  Plaintiffs thus believe that these salespeople

would "join [the lawsuit] if they understood that the Fair Labor Standards Act forbids retaliation

against employees who assert rights provided by that statute."  *Id.*

Plaintiffs further request that the Court issue an order requiring Defendants to compile a

list of the names of every person ever employed as a salesperson at the two dealerships between

January 29, 2010 and the present, as well as a list of their last known home addresses, telephone

numbers, and email addresses.  Defendants are to produce this list within fifteen days of the order

granting conditional certification.  Lastly, Plaintiffs assert that the statute of limitations is tolled

for all putative plaintiffs for each day that other employees do not receive notice of the lawsuit.

## II. LEGAL STANDARD

The FLSA permits collective actions against employers for violations of the statute. In particular, 29 U.S.C. § 216(b) states that "[a]n action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b) (2013). Additionally, § 216(b) requires that all similarly situated employees affirmatively opt into the suit before becoming party plaintiffs. *See id.* ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

A two-step procedure exists for determining whether to certify a class under the FLSA. The initial step is known as conditional certification. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). During this stage, the court has the authority to decide "based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995)).[1] In making this decision, the court must first "satisfy itself that there are other employees . . . [(1)] who desire to 'opt-in' and [(2)] who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Chung v. Affordable Battery, Inc.*, No. 12-60612-CIV-COHN/SELTZER, 2012 U.S. Dist. LEXIS 123006, at *3 (S.D. Fla.

---

[1] Though the *Hipp* case involved a collective action brought under the Age Discrimination in Employment Act, "[t]hat Act incorporates by reference the FLSA's collective action provision, so the *Hipp* procedure applies in both contexts." *Albritton v. Cagle's Inc.*, 508 F.3d 1012, 1014 n.1 (11th Cir. 2007) (citation omitted).

Aug. 29, 2012) (quoting *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991)). "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Hipp*, 252 F.3d at 1218 (quoting *Mooney*, 54 F.3d at 1214). Moreover, "in making a determination in whether to conditionally certify a proposed class for notification purposes only, courts do not review the underlying merits of the action." *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 926 (D. Ariz. 2010). Thus the plaintiff simply has the burden of showing "a 'reasonable basis' for his claim that there are other similarly situated employees" who desire to opt in. *Morgan*, 551 F.3d at 1260. Nevertheless, "a plaintiff cannot rely on speculative, vague, or conclusory allegations." *Chung*, 2012 U.S. Dist. LEXIS 123006, at *4. At the very least, a plaintiff must offer "more than 'only counsel's unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs would come from other [locations].'" *Morgan*, 551 F.3d at 1261 (quoting *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983)).

Following conditional certification, the second step is generally triggered by an employer's motion for decertification after discovery has concluded and the matter is ready for trial. *See id.* At this stage, the plaintiff bears a heavier burden of demonstrating the existence of similarly situated employees. *See id.* Indeed, "the district court has a much thicker record than it had at the notice stage, and can therefore make a more informed factual determination of similarity." *Id.* If the court finds that the putative members are in fact similarly situated, then the court may allow the representative action to proceed to trial. *Id.* In the present matter, however, only the initial conditional certification is at issue.

### III. DISCUSSION

*A. Plaintiffs' Inaccurate Time Records*

Before reaching the two-pronged conditional certification inquiry, Defendants first urge the Court to deny the motion because Alonzo, Charnin, and Cerra have admitted to underreporting their hours. Citing the principle that "[t]here is no violation of the FLSA where the employee performs uncompensated work but deliberately prevents his or her employer from learning of it," Defendants contend that the Court must exclude the two opt-ins, Charnin and Cerra, for their failure to present a FLSA claim. *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1319 (11th Cir. 2007). With the opt-ins removed and no other demonstration of employees who desire to opt into the suit, the Court would then arguably have to deny the motion for conditional certification.

Because reaching such a conclusion would require the Court to rule on the underlying merits of the FLSA claim, the Court disregards this line of reasoning. As noted, "courts do not review the underlying merits of the action" when "making a determination in whether to conditionally certify a proposed class for notification purposes only." *Colson*, 687 F. Supp. 2d at 926. "It is not the Court's role to resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations at the preliminary certification stage of an FLSA collective action." *Barrus v. Dick's Sporting Goods, Inc.*, 465 F. Supp. 2d 224, 230 (W.D.N.Y. 2006). "Even if it turns out that Plaintiffs cannot prevail on their FLSA claim . . . , a collective action should still be certified if they are similarly situated." *Stanfield v. First NLC Fin. Servs.*, No. C 06-3892 SBA, 2006 U.S. Dist. LEXIS 98267, at *13 (N.D. Cal. Nov. 1, 2006). Here, Defendants request the Court to rule on the ultimate merits of both Alonzo's and the opt-

-8-

ins' claims.  This the Court cannot do.

### B.  *Plaintiffs' Standing to Sue Defendant Miami Lakes AM*

Defendants next contend that Plaintiffs have no standing to sue Miami Lakes AM and

thus request that the Court restrict any conditional certification to salespeople at the Kendall

location.  They stress that only Pares ever worked at the Miami Lakes location, but did not

specifically allege a violation of the FLSA during his time there.  Citing a decision by the District

of Nevada, Defendants argue that "to establish Article III standing in a class action, at least one

named plaintiff must have standing in his own right to assert a claim against each named

defendant before he may purport to represent a class claim against that defendant."  *Henry v.*

*Circus Circus Casinos, Inc.*, 223 F.R.D. 541, 544 (D. Nev. 2004).  In response, Plaintiffs contend

that they have standing in accordance with *Henry* as Pares has alleged that he not only worked at

both locations but also was "likewise paid [by Miami Lakes] in the same bi-weekly 'draw against

commission' pay plan employed subsequently when [he] worked in the Kendall dealership."

Decl. of Juan Pares ¶ 8.

Even accepting Defendants' citation of *Henry* as the proper standard, the Court

nonetheless finds that Plaintiffs have standing to sue Miami Lakes AM.  As required by *Henry*,

Plaintiffs have one named party, Pares, who has standing in his own right to assert a claim

against each Defendant.  *See Henry*, 223 F.R.D. at 544.  Pares worked at both the Kendall and

Miami Lakes locations and has alleged that he was subject to the "same bi-weekly 'draw against

commission' pay plan" at Miami Lakes as he later received at Kendall.  Though Pares concedes

that the Miami Lakes dealership predicated the amount of its biweekly draw on the number of

hours worked rather than the Kendall dealership's set amount of $600, this discrepancy is not

-9-

significant.  In truth, Pares's payment plan at Miami Lakes resembles the format of the plan that

is the subject of Alonzo's, Charnin's, and Cerra's claims.  Pares thus alleges that this general

"draw against commission" payment plan at both dealerships violated the FLSA as it prevented

him from generating enough commissions to cover the minimum wage for the number of hours

actually worked.  *See* Am. Fair Labor Standards Act Compl. ¶ 13.

 Indeed, this Court has reached the same conclusion in nearly identical circumstances.  In

*Montes de Oca v. Gus Machado Ford of Kendall, LLC*, the Court authorized conditional

certification of a class of salespeople at two separate car dealerships whose "draw against

commission" payment plans allegedly violated the FLSA.  *See* Order on Plaintiffs' Motion for

Conditional Certification, *Montes de Oca v. Gus Machado Ford of Kendall, LLC*, No. 10-23610-

CIV-MORENO/TORRES (S.D. Fla. Apr. 18, 2011).  The Court reached this conclusion despite

the fact that an opt-in plaintiff was the only party who had worked at both locations.  *See id.* at 7.

As a result, the Court here likewise finds that Plaintiffs have standing to sue Miami Lakes AM.

### C.  Plaintiffs' Motion for Conditional Certification

#### 1.  Opt-In Plaintiffs

 In their challenge to the motion for conditional certification, Defendants first contend that

the submissions of Charnin and Cerra as opt-in plaintiffs are insufficient to satisfy Plaintiffs'

initial burden of demonstrating the existence of other employees who desire to opt into the suit.

Beyond these two individuals, Defendants insist that Plaintiffs' statements regarding other

salespeople who have an interest in joining the suit are nothing more than conclusory

generalizations.  They deny that such unsupported statements of belief are adequate for satisfying

the first prong of the conditional certification inquiry.

As stated, a plaintiff requesting conditional certification must first show the court that

there are other employees "who desire to 'opt-in'." *Chung*, 2012 U.S. Dist. LEXIS 123006, at *3

(quoting *Dybach*, 942 F.2d at 1567). In the past, this court has determined that "as little as one

additional 'opt-in' plaintiff is sufficient." Order on Plaintiffs' Motion for Conditional

Certification at 10, *Montes de Oca*, No. 10-23610-CIV-MORENO/TORRES (citing *Wynder v.*

*Applied Card Sys., Inc.*, No. 09-80004-CIV-MARRA, 2009 U.S. Dist. LEXIS 100596, at *2

(S.D. Fla. Oct. 7, 2009); *Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-CIV-

MARTINEZ/LYNCH, 2006 U.S. Dist. LEXIS 58484, at *10 (S.D. Fla. May 17, 2006)). As a

result, the Court here concludes that the affidavits from the two other employees shows that at

least two other co-workers desire to join the suit, "thereby raising [Plaintiffs'] contention beyond

one of pure speculation." *See Guerra*, 2006 U.S. Dist. LEXIS 58484, at *10. Plaintiffs have

therefore satisfied the initial prong of the conditional certification inquiry.

### 2. Similarly Situated Employees

Defendants further contend that Plaintiffs have failed to demonstrate the existence of

other employees who are similarly situated with respect to their job requirements and with regard

to their pay provisions. Though the Eleventh Circuit has not precisely defined what constitutes

"similarly situated" in the FLSA context, the standard is "more elastic and less stringent than the

requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Grayson v. K Mart Corp.*, 79

F.3d 1086, 1095 (11th Cir. 1996). Plaintiffs thus "need show only that their positions are similar,

not identical, to the positions held by the putative class members." *Hipp*, 252 F.3d at 1217.

However, plaintiffs still must make "substantial, detailed allegations of FLSA violations and

provide[] evidentiary support that they, like other members of the putative opt-in plaintiff class,

-11-

were the victims of employment practices . . . which resulted in these violations." *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 365 (M.D. Ala. 1999).

A plaintiff may satisfy this burden by "providing sufficient evidence showing [that the employer] engaged in a policy or pattern of FLSA violations." *Ledbetter v. Pruitt Corp.*, No. 5:05-CV-329 (CAR), 2007 U.S. Dist. LEXIS 10243, at *10 (M.D. Ga. Feb. 12, 2007). Thus a plaintiff can demonstrate that other employees are similarly situated by pointing to "a common scheme, plan, or policy." *See Barron v. Henry Cnty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003). Yet "the Eleventh Circuit has now made it clear that in this circuit a plaintiff may establish that others are 'similarly situated' without pointing to a particular plan or policy." *Id.* To do so however, "a plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." *Id.* Indeed, a plaintiff must show "that the violations were more than sporadic occurrences." *Id.* at 1104. Ultimately, though, the Court must determine whether, "based upon the particular facts of the case, the similarities among the putative class members are sufficient so that it is more practical, efficient, and fair to proceed as a collective action rather than requiring separate actions." Order on Plaintiffs' Motion for Conditional Certification at 6, *Montes de Oca*, No. 10-23610-CIV-MORENO/TORRES.

Defendants now claim that Plaintiffs have not sufficiently demonstrated the existence of similarly situated employees for a number of reasons. First, they claim that the payment plans of Pares and Gomez were "completely different" from those of Alonzo, Charnin, and Cerra. Pares and Gomez were each paid a biweekly draw of $600 that was unrelated to the number of hours worked while Alonzo, Charnin, and Cerra received a biweekly draw of $7.67 per hour worked.

Second, Defendants claim that Plaintiffs' allegations represent individualized claims inappropriate for a collective action. From the outset, Defendants note that the "draw against commission" payment plan is not a per se violation of the FLSA. In fact, the practice is explicitly condoned in the Department of Labor's Field Operations Handbook. *See Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570, 1576 (11th Cir. 1985). Consequently, Defendants contend that the Court must engage in individual analyses for each Plaintiff to determine whether Defendants properly compensated them for every hour worked in order to establish specific violations of the FLSA. In support, Defendants point to *Ledbetter v. Pruitt Corp.* where the court determined that a collective action was not appropriate for claims involving an employer's automatic meal break deductions. *See Ledbetter*, 2007 U.S. Dist. LEXIS 10243, at *16. Because such deductions are not per se violations of the FLSA, the plaintiff would have had to have demonstrated that each putative plaintiff was not working during the deducted periods to demonstrate an actual FLSA violation. *See id.* at *13. The court thus found that this type of "individualized analysis runs directly counter to 'the economy of scale' envisioned by collective treatment of similarly situated employees under § 216(b) of the FLSA." *Id.* at *16.

Finally, Defendants insist that the separate nature of the two dealerships precludes a finding of similarity for salespeople at the Miami Lakes location. To this end, they stress the dealerships' separate bank accounts and their independent control over daily management, hiring and firing, personnel policies, and payment plans. Defendants additionally offer *Harper v. Lovett's Buffet, Inc.* as support for the proposition that "[c]ourts are reluctant to find similarity among different working locations with different supervisors absent clear evidence of similar working conditions and rules." Defs.' Opp'n to Pls.' Mot. for Conditional Certification of

-13-

Collective Action 10.

Plaintiffs in turn emphasize that they, along with the two opt-in plaintiffs, shared a "draw against commission" payment plan that did not adequately compensate them for the actual number of hours worked. With the reduction in commissions for the biweekly draws, Plaintiffs admit that they "had an incentive to understate the number of hours they worked to avoid such . . . liability." Pls.' Mot. for Conditional Certification of Collective Action 6. Since Plaintiffs thus "frequently worked well beyond their scheduled hours," the dealerships' payment of the draws plus the reduced commissions did not cover the minimum wage owed and caused Plaintiffs to receive "less than minimum wage on account of those hours worked." *Id.*

Plaintiffs also deny Defendants' contention that their allegations constitute individualized claims inappropriate for a collective action. They instead maintain that the Court need only compare the record of commissions paid against the number of hours that each salesperson actually worked in each pay period to determine the amount of each claim. To bolster their argument, Plaintiffs again cite this Court's decision in *Montes de Oca*. In that case, the Court authorized conditional certification for a group of automobile salespeople who received a similar "draw against commission" payment plan. *See* Order on Plaintiffs' Motion for Conditional Certification at 2, *Montes de Oca*, No. 10-23610-CIV-MORENO/TORRES. The plaintiff in fact alleged that all similarly situated employees received a minimum "salary" of $300 that the employer treated as a draw against commissions earned, comparable to the payment plan of Pares and Gomez. *See id.* Because the salespeople regularly worked in excess of fifty hours a week, the plaintiff alleged that the $300 draw plus the reduced commissions did not cover the minimum wage owed for the hours worked. *Id.* at 3. And since the affidavits of other employees who

-14-

desired to opt into the suit made it apparent that "each salesperson performed similar duties and was paid under similar pay provisions as Plaintiff," the Court found that other employees existed who were similarly situated to the plaintiff. *Id.* at 11.

Lastly, Plaintiffs assert that the Kendall and Miami Lakes dealerships in fact operate as a single conglomerate as indicated by their shared father-son management and their joint office at the Miami Lakes location that handles human resources, payroll processing, accounting functions, and the calculation of commissions. They additionally contend that Defendants' filing of a single affidavit from Ali Ahmed purporting to speak about the business practices of both locations further supports a finding that the two dealerships constitute a single enterprise. And once more, Plaintiffs cite to *Montes de Oca* where this Court authorized conditional certification of a class of salespeople at two car dealerships that operated under a shared management scheme. *See id.* at 9.

As an initial matter, the Court finds that the difference between the payment plans at issue here is not so significant as to preclude a finding of similarly situated employees. Indeed, plaintiffs seeking conditional certification "need show only that their positions are similar, not identical, to the positions held by the putative class members." *Hipp*, 252 F.3d at 1217. In this case, Plaintiffs and the putative class members shared a common payment plan in which the draws that they received were deducted from the commissions that they earned. The only discrepancy between the payment plans that Defendants highlight is the manner in which the draws were calculated, namely the set draw of $600 received by Pares and Gomez versus the draw based on an hourly wage for recorded hours that the remaining salespeople received. Yet all salespeople shared a reduction in commissions based on the draws that they received. They

thus shared the element of the payment plan that lies at the heart of the claims in this matter, a fact which is sufficient at this stage to demonstrate the requisite similarity.

The Court likewise rejects Defendants' contention that Plaintiffs' allegations are too individualized for a collective action. As Plaintiffs have correctly noted, this Court granted conditional certification in *Montes de Oca* under very similar circumstances. Where the plaintiff and other salespeople performed similar duties and shared a common "draw against commission" payment plan, the Court found a "reasonable basis" for the plaintiff's claim that other similarly situated employees existed. Order on Plaintiffs' Motion for Conditional Certification at 11, *Montes de Oca*, No. 10-23610-CIV-MORENO/TORRES. This case, as with *Montes de Oca*, would only require the Court to compare the amount of commissions and draws received with the amount of hours worked, and thus minimum wage owed, in order to calculate each salesperson's claim amount.

Moreover, this case is distinguishable from the circumstances presented in *Ledbetter*. From the outset, the court in *Ledbetter* analyzed the plaintiff's motion for conditional certification under the second, "more rigorous" stage of the collective action process because the parties had completed discovery. *Ledbetter*, 2007 U.S. Dist. LEXIS 10243, at *7. This case, by contrast, requires a determination under the "fairly lenient standard" of conditional certification. *See Hipp*, 252 F.3d at 1218 (quoting *Mooney*, 54 F.3d at 1214). Notwithstanding this distinction, because the meal reduction plan in *Ledbetter* was not a per se violation of the FLSA, the court there had to inquire into each employee's activities during the meal periods to determine if a FLSA violation could even be alleged. *See id.* at *14–16. The plaintiff was thus seeking conditional certification on the basis of unsupported allegations of FLSA violations. *See id.*

-16-

Here, however, Plaintiffs have alleged that FLSA violations did in fact occur because Defendants' payment plan precluded their salespeople from receiving the minimum wage that they were entitled to based on the actual number of hours that they worked. The Court accordingly does not need to engage in individualized analyses of each salesperson's work history to determine whether a FLSA violation could even be alleged; the affidavits submitted already provide detailed claims explaining how such violations allegedly occurred for a group of employees.

Finally, based on its decision in *Montes de Oca*, the Court concludes that other similarly situated employees exist at both the Kendall and Miami Lakes dealerships. In granting conditional certification of a class for multiple locations, the Court in *Montes de Oca* observed that the two dealerships in question "share[d] common management, . . . share[d] a common commission pay plan, [and] provide[d] payroll services at one location." *Id.* at 9. Likewise, the Kendall and Miami Lakes dealerships here share a common father-son management, share a common commission payment plan, and maintain a single office for the handling of human resources, payroll processing, and accounting functions.

Furthermore, Defendants' reliance on *Harper* is misplaced. In *Harper*, a number of employees who worked at the defendant's Dothan, Alabama restaurant sought conditional certification of a class representing employees who worked at restaurants owned by the defendant in several other southeastern states. *See Harper*, 185 F.R.D. at 360–61. The plaintiffs alleged that the defendant maintained a consistent employment practice throughout all of its restaurants that denied its employees proper wages under the FLSA. *Id.* at 361. Nevertheless, the court found that "[w]hile Plaintiffs . . . presented evidence that FLSA violations may exist with regard

-17-

to certain hourly wage employees at Defendant's Dothan restaurant, there [was] a total dearth of factual support for Plaintiffs' allegations of widespread wrongdoing at Defendant's other restaurants." *Id.* at 363. Here, in contrast, Pares worked at both dealerships and has attested to the payment practices of both. Rather than a "total dearth of factual support," Plaintiffs in this case have produced sufficient factual allegations to support their claims regarding both locations.

Mindful of the "fairly lenient standard" at this stage that "typically results in 'conditional certification' of a representative class," the Court finds that Plaintiffs have sufficiently demonstrated the existence of similarly situated employees at both the Kendall and Miami Lakes locations. *Hipp*, 252 F.3d at 1218 (quoting *Mooney*, 54 F.3d at 1214). The Court therefore authorizes Plaintiffs to send notice to similarly situated salespeople at the two dealerships. Defendants may still move for decertification at a later time.

### D. Format of Plaintiffs' Proposed Notice

In light of the Court's decision to grant conditional certification, Defendants have posed a number of objections to the format of Plaintiffs' proposed notice. First, they contend that the Court should narrow the scope of the class in relation to the requested time frame. For the Kendall dealership, Defendants request that the Court permit notice only to those salespeople employed after the onset of ownership by Faisal Ahmed on February 3, 2012. For the Miami Lakes dealership, Defendants request a restriction of notice to salespeople employed after January 29, 2011 because Plaintiffs have failed to allege a willful violation of the FLSA that would extend the statute of limitations beyond two years. Defendants do note though that the Miami Lakes location has existed since June 15, 2010.

Second, Defendants contend that the notice should refer to the "applicable federal

minimum wage" as Plaintiffs filed a suit under the FLSA rather than Florida state law. Additionally, Defendants ask that the notice advise potential opt-in plaintiffs that they only have a claim if they were paid less than minimum wage during "one or more months" of employment as opposed to one or more biweekly pay periods. Since the settlement period in this case was monthly rather than biweekly, Defendants assert that the notice should advise that a FLSA violation could only have occurred on a monthly basis.

Third, Defendants request that the Court remove the case name and number from the notice to eliminate any implication that the Court approves this action and is not impartial. Fourth, Defendants ask that the notice identify Defendants' counsel and counsel's contact information. Finally, Defendants argue that the notice should inform putative plaintiffs of the liabilities that may arise as a result of joining this lawsuit including the possibility that opt-in plaintiffs will have to pay a proportional share of the costs of prosecuting this action if Plaintiffs do not prevail. In the absence of such a warning, Defendants maintain that opt-in plaintiffs will not be given an opportunity to make an informed decision about joining the suit.

Plaintiffs largely do not offer specific objections to these requests. Rather, they insist that their proposed notice is "substantively identical" to those delivered in other FLSA cases conditionally certified by this Court. Plaintiffs do however argue that while putative plaintiffs should know that the notice is not an endorsement by the Court, they should also know that the notice is not a form of solicitation or advertisement. For this reason, they assert that the notice should indicate that it has the Court's approval and is produced in the context of a lawsuit.

As "[t]he decision to create an opt-in class under § 216(b) . . . remains soundly within the discretion of the district court," *Hipp*, 252 F.3d at 1219, the Court permits most of Defendants'

requested amendments to the proposed notice. As for the requested temporal restrictions, the Court limits the notice to Kendall salespeople employed after the onset of Faisal Ahmed's ownership on February 3, 2012. However, the Court cannot speak to Defendants' statute of limitations argument regarding the Miami Lakes dealership as that would require the Court to rule on the underlying merits of Plaintiffs' claims. *See Barrus*, 465 F. Supp. 2d at 230. Namely, it would compel the Court to reach a conclusion regarding the willfulness of Defendants' alleged violations of the FLSA. As a result, the Court restricts the notice to salespeople employed at Miami Lakes after June 15, 2010, the commencement of business at the Miami Lakes location.

The Court likewise requires that the notice contain a reference to the "applicable federal minimum wage" and that it advise putative plaintiffs that they should join the suit if they believe a FLSA violation occurred during "one or more months" of their employment. The notice further must include the name of Defendants' counsel and counsel's contact information. Lastly, the notice must warn potential plaintiffs of the possible costs and liabilities of joining this action in order to facilitate an informed decision. *See White v. KCPAR, Inc.*, No. 6:05-cv-1317-Orl-22DAB, 2006 U.S. Dist. LEXIS 100966, at *9 (M.D. Fla. June 2, 2006) ("Plaintiff's proposed 'Notification' letter . . . , to be sent to all similarly situated employees, is defective because it fails to fully inform recipients about the consequences of 'opting in.'").

Nonetheless, the Court permits Plaintiffs to include the case name and number in the notice. To enable an informed decision, putative plaintiffs should also know that the Court has approved the notice and that the notice is more than a mere solicitation. Plaintiffs shall therefore include these amendments into their notice.

-20-

### E.  Plaintiffs' Discovery Requests

Defendants next challenge Plaintiffs' discovery requests as burdensome and overly broad. First, they object to Plaintiffs' request for the email addresses of the dealerships' salespeople since the dealerships never maintained that information in their computer system.  To comply with such a request, Defendants assert that they would have to manually search through their paper personnel files or interview current salespeople for any information they might have on past employees.  Additionally, Defendants reiterate their arguments for restricting the temporal scope of the class.  They request that discovery be limited to information on individuals employed at Kendall since February 3, 2012 and at Miami Lakes since June 15, 2010.

Due to Plaintiffs' request of expedited discovery production within fifteen days of the Court's order granting conditional certification, the Court limits Plaintiffs' discovery request to the last known home addresses and telephone numbers of potential plaintiffs.  Requiring Defendants to dig through years of personnel records or to conduct employee interviews is indeed a heavy burden within the time frame requested by Plaintiffs.

Additionally, as this Court has already held in its discussion of Plaintiffs' proposed notice, discovery shall be limited to individuals employed at Kendall since February 3, 2012 and at Miami Lakes since June 15, 2010.  *See* Part III.D.

### F.  Tolling of the Statute of Limitations

As a final matter, Defendants object to Plaintiffs' suggestion that the statute of limitations is tolled for all other employees for every day that passes in which other employees do not receive notice of the suit.  *See* Pls.' Mot. for Conditional Certification of Collective Action 8.  To begin, Defendants point to the FLSA's unambiguous statement that the limitations period begins

-21-

for opt-in plaintiffs when a consent to join is filed. *See* 29 U.S.C. § 256(b) ("[I]n the case of a collective or class action instituted under the Fair Labor Standards Act of 1938 . . . , it shall be considered to be commenced in the case of any individual claimant . . . (b) if such written consent was not so filed [on the date when the complaint is filed] or if his name did not so appear [as a party plaintiff]—on the subsequent date on which such written consent is filed in the court in which the action was commenced."). In addition, Defendants emphasize that Plaintiffs have not identified any extraordinary circumstances that would permit equitable tolling of the statute of limitations.

As Defendants have noted, the FLSA states that "if the plaintiff is not named in the complaint, the action is deemed commenced upon the filing of a written consent to join the action." *Love v. Phillips Oil, Inc.*, No. 3:08cv92/MCR/MD, 2008 U.S. Dist. LEXIS 102366, at *3 (N.D. Fla. Dec. 9, 2008). Thus the Eleventh Circuit has observed that the Act's deadline is "the result of Congress' 'concern that an opt-in plaintiff should not be able to escape the statute of limitations bearing on his cause of action by claiming that the limitations period was tolled by the filing of the original complaint.'" *Id.* at *3–4 (quoting *Grayson*, 79 F.3d at 1106). Consequently, the FLSA itself belies Plaintiffs' claim that the statute of limitations has been tolled. Nor have Plaintiffs offered any evidence of the "'extraordinary circumstances' . . . 'that are both beyond [their] control and unavoidable even with diligence'" necessary to warrant equitable tolling of the statute of limitations. *Id.* at *4 (quoting *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999)). The Court therefore denies any request by Plaintiffs for tolling of the statute of limitations.

## IV.  CONCLUSION

For the above reasons, it is

**ADJUDGED** that

(1)  Plaintiffs' Motion for Conditional Certification of Collective Action Under the FLSA, Production by Defendants of a Comprehensive List of Present and Former Employees, and Court Authorized Mailing of Opt-In Notices **(D.E. No. 7)**, filed on **February 8, 2013**, is GRANTED.

(2) The Court authorizes Plaintiffs to send notice to those putative plaintiffs employed at the Kendall dealership after February 3, 2012 and at the Miami Lakes dealership after June 15, 2010.  Plaintiffs shall further incorporate the amendments set out in Part III.D of this order into their notice.

(3) Defendants shall produce the requested discovery and list of salespeople, subject to the limitations stated in Part III.E of this order, no later than fifteen (15) days after the issuance of this order.

(4) Plaintiffs' request for tolling of the statute of limitations is DENIED.


DONE AND ORDERED in Chambers at Miami, Florida, this 26 day of June, 2013.


_____

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE


Copies provided to:
Counsel of Record

-23-